UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUNE BETTS AND WILLIAM BETTS, husband and wife,

Plaintiffs,

v.

EQUIFAX CREDIT INFORMATION SERVICES, INC., a foreign corporation and TOPCO FINANCIAL SERVICES, INC., a Washington corporation, TRACEY AUSTELL and JANE DOE AUSTELL, and the marital community property composed thereof,

Defendants.

CASE NO. C01-1621C

ORDER

This matter comes before the Court on motion for summary judgment by defendants Topco Financial Services, Inc. and Tracey and Jane Doe Austell (collectively "defendants") (Dkt. No. 13), plaintiffs' cross-motion for partial summary judgment (Dkt. No. 15), and defendants' motion to strike plaintiffs' cross-motion for partial summary judgment (Dkt. No. 18). The Court has considered the papers submitted by the parties and determined that oral argument is not necessary. For the following reasons, defendants' motion for summary judgment is hereby GRANTED in part and DENIED in part, plaintiffs' cross-motion for partial summary judgment is hereby DENIED, and defendants' motion to

ORDER – 1

strike plaintiffs' cross-motion for partial summary judgment is DENIED as moot.

I. FACTS & PROCEDURAL HISTORY

The following facts are undisputed. On March 3, 1993 a vehicle seller's report was filed with the State of Washington Department of Licensing evidencing the sale of a 1982 Cadillac. The sale allegedly occurred February 20, 1983. The listed seller was Freddie D. Jackson; the listed purchaser was June Baker, plaintiff Ms. Betts's former name. The report also listed Ms. Betts's then current address. In December 1998, the Cadillac was reported abandoned. A law enforcement agency authorized the vehicle's tow and impoundment by Royal Towing, who subsequently sold the vehicle at a public auction. The auction did not cover the costs incurred, which by statute created a deficiency claim. Royal Towing assigned the deficiency claim to Topco for collection.

In December 2000, June and William Betts attempted to obtain a mortgage. A credit report obtained during this process revealed Topco was reporting to Equifax Credit Information Services, Inc., a credit reporting agency, an unpaid debt of $488. This amount reflected the remaining towing and storage fees arising from the vehicle's impoundment. That same month, Ms. Betts contacted Topco first by telephone and later in writing. While the details of the conversation are disputed, Ms. Betts contends she denied ever owning the Cadillac or having contact with the listed seller. In January 2001, Topco filed suit against Ms. Betts in King County District Court seeking recovery on behalf of Royal Towing. The court entered judgment in favor of Ms. Betts, holding her not liable for the services rendered by the towing company. Following the outcome of the trial, Topco claims to have sent a letter to Equifax requesting deletion of the item from Ms. Betts's credit file.

II. DISCUSSION & ANALYSIS

Defendants move for summary judgment on all claims. In response, plaintiffs cross-move for partial summary judgment against defendants with respect to liability on their Fair Debt Collection

ORDER – 2

Practices Act ("FDCPA") and Fair Credit Reporting Act ("FCRA") claims.[1] Plaintiffs voluntarily withdraw and relinquish all other claims against Topco and the Austells. Accordingly, the Court's analysis shall focus on plaintiffs' FDCPA and FCRA claims.

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2002). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A. Fair Debt Collection Practices Act Claim

The parties' cross-motions for summary judgment raise the question of whether an obligation imposed on an individual by virtue of state statute is a "debt" for the purposes of the FDCPA. This is a question of law for the Court's determination. The FDCPA defines "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (2002). Here, the relevant debt is the deficiency claim held by Royal Towing, to recoup towing and storage expenses, which it assigned to Topco for collection. See Wash. Rev. Code §§ 46.55.105(4), .140(1) (2002). By virtue of her former name and address being listed on the vehicle seller's report, debt collection efforts were directed at Ms. Betts.

Therefore, the question becomes whether this debt arose from a "transaction," as contemplated by the statute. The pertinent factual occurrence to consider is the one that gave rise to the deficiency claim. Although Ms. Betts would not have acquired the purported debt but-for the fraudulently filed

---

[1] Although defendants move to strike as untimely plaintiffs' cross-motion for partial summary judgment, the Court DENIES as moot the motion to strike for the reasons set forth below.

ORDER – 3

vehicle seller's report, that debt specifically arose from the impoundment and storage of the Cadillac, not the alleged transfer of ownership to Ms. Betts. Accordingly, the Court must focus on whether the impoundment and storage, authorized by state statute, constitutes a transaction.

No Ninth Circuit case directly addresses the issue. However, the Ninth Circuit has previously relied on and "adopt[ed] the reasoning" of the Seventh Circuit's "well reasoned and persuasive" opinion in Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322 (7th Cir. 1997). Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 740-42 (9th Cir. 1997). In Bass, the Seventh Circuit sought to preserve broad congressional intent and concluded by defining "transaction" as a "broad reference to many different types of business dealings between parties." 111 F.3d at 1325.[2] The Bass court rejected the narrow Third Circuit interpretation, upon which defendants rely here, but did find that "the FDCPA limits its reach to those obligations to pay arising from consensual transactions where parties negotiate or contract for consumer related goods or services." Id. at 1326.

The issue here, therefore, is whether any contractual, business, or otherwise consensual arrangement for services rendered can be found between Ms. Betts, who steps into the shoes of the actual owner of the Cadillac, and Royal Towing. This Court finds that it cannot.[3] Impoundment under Wash. Rev. Code § 46.55 is not a consensual consumer transaction. Rather, it is a consequence of

---

[2] The Eleventh Circuit also considered the scope of the FDCPA as determined by the word "transaction." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367 (11th Cir. 1998) (holding an obligation to compensate for tort damages arising out of negligence fell outside the scope of the statute). That Court, finding "transaction" unambiguous, determined its was bound to apply its ordinary meaning and that it "necessarily implies some type of business dealing between parties." Id. at 1371. Hawthorne went on to find that, "at a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation." Id.

[3] The Court appreciates plaintiffs' concerns that this determination leaves vulnerable, in certain circumstances, victims of fraud, identity theft, or other deceitful behavior. However, the Court cannot disregard the plain statutory language chosen by Congress.

ORDER – 4

leaving one's vehicle in an unauthorized location subject to impoundment.[4] Liability automatically attaches. The impoundment of one's vehicle and statutory liability that necessarily attaches are not akin to even a broad interpretation of a contractual, business, or otherwise consensual arrangement for services rendered. There is simply no "transaction" between the parties. Law enforcement personnel and state statute, not the Cadillac owner, authorized the towing and impoundment of the vehicle.

This Court finds no genuine issue of material fact regarding plaintiffs' FDCPA claim and determines as a matter of law that, because no "transaction" took place as required by the statute, plaintiffs' claim falls outside the scope of the FDCPA. Thus, the Court GRANTS defendants' motion for summary judgment with respect to plaintiffs' claim under the Fair Debt Collection Practices Act and DENIES plaintiffs' cross-motion for partial summary judgment on this claim.[5]

B. Fair Credit Reporting Act Claim

The parties respectively move for judgment as a matter of law with respect to whether Topco failed to comply with its Fair Credit Reporting Act ("FCRA") obligations. Plaintiffs' claim under the FCRA stems from the duties of furnishers of information in connection with credit reporting agencies. There is no dispute that Topco is a furnisher of information for purposes of 15 U.S.C. § 1681s-2(b) (2002).[6] After receiving notice of a disputed debt from a consumer reporting agency pursuant to § 1681i(a)(2), a furnisher of information shall:

(A) conduct an investigation with respect to the disputed information;

---

[4] The record indicates that the Cadillac was validly towed and impounded after being abandoned on a public thoroughfare. A law enforcement agency authorized Royal Towing to tow and impound the vehicle. Dec. of Christopher Green, Att. 3, Ex. 4.

[5] Therefore, the Court DENIES as moot defendants' motion to strike with respect to this claim.

[6] The FCRA applies in this context only to Topco. The Austells are not personally liable under the FCRA.

ORDER – 5

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency; and
(D) if the investigation finds the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b)(1) (2002). This subsection creates a private cause of action that can be enforced by consumers. Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-60 (9th Cir. 2002).[7] Any person negligent in failing to comply with any FCRA requirement is liable to affected consumers. 15 U.S.C. § 1681o (2002). Additionally, a person who "willfully" fails to comply with any provision of the FCRA is subject to damages. 15 U.S.C.§ 1681n (2002).

The threshold question is whether Topco ever received notice of a dispute from Equifax. In a letter dated February 13, 2001, Ms. Betts provided notice to Equifax that she was disputing the alleged debt and its collection by Topco. On March 6, 2001, Topco received a Consumer Dispute Verification ("CDV") form from Equifax regarding Ms. Betts. Topco responded by updating her address and confirming the debt's existence to Equifax. Later that month Ms. Betts again contacted Equifax to dispute the accuracy of the alleged debt. On March 20, 2001, Topco received an additional CDV from Equifax. Topco responded by increasing the debt amount from $488.00 to $829.00 and again confirming the debt's existence to Equifax.[8] Based on Topco's own testimony and interrogatory

---

[7] Plaintiffs reference various alleged violations by Topco of 15 U.S.C. § 1681s-2(a), specifically Topco's duties to provide accurate information, correct and update information reported, and provide notice of dispute. However, § 1681s-2(d) expressly limits enforcement of subsection (a) to the federal agencies and officials and state officials enumerated in § 1681s. Plaintiffs' contentions regarding Topco's alleged violations of § 1681s-2(a) do not create a private cause of action. See Nelson, 282 F.3d at 1059. Thus, the Court makes no determination as to whether Tapco violated any provisions of § 1681s-2(a).

[8] The increase reflected $126.60 in interest, a $41.00 filing fee, a $49.50 service fee, and $125.00 in attorney's fees.

ORDER – 6

answers, the Court concludes as a matter of law that Topco received notice of the disputed debt. Having received notice, Topco was obligated to comply with § 1681s-2(b)(1).

Next, defendants argue, as a matter of law, that their reliance on the Department of Licensing vehicle seller's report satisfies any statutory obligation to "conduct an investigation." After receiving confirmation of the report's filing and contents, defendants contend they had no further duty to investigate. Defendants cite Henson v. CSC Credit Servs., 29 F.3d 280 (7th Cir. 1994) for this position. However, in Henson the Seventh Circuit held that while reliance on a clerk's erroneous notation of judgment in the judgment docket was a reasonable practice, once the consumer disputed the debt to the consumer reporting agency, that agency was required to go beyond reliance on the judgment docket in conducting its investigation. 29 F.3d at 285-86. The court reasoned:

> A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice... when a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation.

Id. at 286-87. Defendants proffer no rationale why this standard should not apply equally to furnishers of information. The statute requires that furnishers of information "shall" conduct an investigation. Although defendants contend that verification of such a debt is an "almost impossible task," this conclusory statement is insufficient. Whether or not this Court adopts the balancing test in Henson urged by defendants, a genuine issue of material fact exists with respect to whether Topco conducted any investigation, and if so, whether that investigation was reasonable.[9]

Further, defendants' contention that they were authorized by statute to rely on the vehicle seller's report lacks merit. The relevant statute allows a towing company to impose liability on the purchaser

---

[9] Additionally, a genuine issue of material fact exists with respect to whether Topco "wilfully" violated § 1681s-2(b)(1) of the FCRA. See 15 U.S.C. § 1681n (2002).

ORDER – 7

listed on a properly filed vehicle seller's report. See Wash. Rev. Code § 46.12.101. Although Topco's reliance on the vehicle seller's report for the initial imposition of liability may have been justified, once notified of the dispute by Equifax, Topco had a statutory duty to investigate.[10] Similarly, Topco's argument that because the debt arose out of a statute, rather than a consensual contract or consumer agreement, its ability and duty to investigate was limited is without legal basis. As an individual against whom collection practices were imposed, regardless of the nature and origin of the debt, Ms. Betts is a "consumer" within the meaning of the statute. 15 U.S.C. § 1681a (2002).

In conclusion, genuine issues of material fact remain as to whether Topco conducted an investigation, and if so, whether that investigation was reasonable under the circumstances. An issue of fact also exists as to whether Topco willfully failed to investigate. Therefore, the Court DENIES defendants' motion for summary judgment with respect to plaintiffs' claim under the FCRA and DENIES plaintiffs' cross-motion for partial summary judgment on this claim.[11]

C. Release of Equifax

Finally, defendants argue that plaintiffs' settlement with Equifax effectively releases all claims against Equifax's co-defendants. The Ninth Circuit, following Supreme Court precedent, has explicitly rejected this contention: "The release of one tortfeasor does not release all other tortfeasors absent an agreement to effect such a release. The rule is appropriate for the federal common law context . . . as well as for the statutory context." Avery v. United States, 829 F.2d 817, 819 (9th Cir. 1987) (citations

---

[10] Topco's reliance on the vehicle seller's report may have been unjustified in any event. Wash. Rev. Code § 46.55.140(1) allows for liability to extend to the purchaser listed on such a vehicle seller's report *only if* it was "timely and properly filed" in accordance with Wash. Rev. Code § 46.12.101. The statute requires the report be filed on or before the fifth day following the date of sale. In the undisputed copy of the vehicle seller's report submitted to the Court evidences a sale date of February 20, 1983 and a filing date of March 3, 1983. The vehicle seller's report was thus not properly and timely filed.

[11] Accordingly, the Court DENIES as moot defendants' motion to strike with respect to these claims.

ORDER – 8

omitted). Defendants' reliance on Tennison v. Circus Circus Enters., Inc., 244 F.3d 684 (9th Cir. 2001) is remiss for two reasons. One, Tennison relied on the harmless error doctrine, not the common law rule referenced above. Id. at 691. Two, Tennison involved "joint" tortfeasors. Id. at 686. Here, plaintiffs assert factually independent statutory violations against Equifax, Topco, and Tracey Austell. Avery is controlling in this context, and the Court concludes that plaintiffs' release of Equifax does not justify dismissal of any claims asserted against Topco or Tracey Austell.

III. CONCLUSION

In accordance with the above analysis, defendants' motion for summary judgment is hereby GRANTED in part and DENIED in part. Plaintiffs' cross-motion for partial summary judgment is hereby DENIED. Additionally, defendants' motion to strike plaintiffs' cross-motion for partial summary judgment is hereby DENIED as moot.

SO ORDERED this 5th day of February, 2003.

CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 9